THOMAS, Justice.
The appellants filed a bill of complaint against the appellee seeking a decree quieting title to the west half of a block in the City of Quincy alleged to have been unimproved and unpossessed.
The appellants, Ermine M. Owenby, in her individual capacity and as trustee of the real estate belonging to W. R. Ward at the time of his death, and Annie Belle Lyle Malone, alleged that in 1945 they were approached by representatives of the city who offered them $4500 for the property in question. The city had already purchased the east half of the block for a like amount. The appellants agreed to place title in the name of the city so that the land as improved would become a memorial to Arthur R. Malone, and accordingly they executed a deed to the city which contained a recital that the land was being conveyed for use by the grantee as “a park, playground or for recreational purposes for white persons only.” It was specified that by the acceptance of the deed, the grantee agreed to use the property for such purposes and that the grantors could enjoin its use for any other purpose and that in the event the property was not devoted to such purposes within five years, or its use should be discontinued for one year, it should revert to the grantors, their heirs or assigns.
According to the bill, no consideration whatever was received for the execution of the deed despite the recital that the property was bargained, granted and sold in consideration of ten dollars and other valuable considerations. It was averred that no money was paid and that the term “other valuable considerations” was meant to be a reference to the contemplated development of the land as a park and a memorial. The appellants complained that the property had never been used as a park, playground or recreational area and that its condition at the time of suit was the same as at the time of sale. So the appellants prayed that the deed be cancelled and the title confirmed in them.
The controversy culminated in a final decree dismissing the bill. The chancellor in a scholarly opinion discussed the various phases of the litigation, the recognized law governing covenants, restrictions and conditions and animadverted on the indefiniteness of the improvements contemplated by the grantors and the grantee by which the former were induced to convey.
As the chancellor wrote, the doubt about the original arrangement was not dispelled by, if indeed, it did not arise from, testimony about conversations among the grantors and the mayor at the time the negotiations were in progress. It was mentioned that the property should become a “thing of beauty”; that there would be a park and flowers, and possibly a bandshell; that a landscape architect would be engaged to supervise the beautification of the property; that a suitable marker would be erected, supposedly to show the name of the person in whose memory the gift had been made. Although none of these elements was clearly defined and adopted, it is plain to us that there was never the intention that the city could retain the property and do as little as it did in the period elapsing between the execution of the deed and the institution of the suit.
It seems to us useless now to attempt to deduce what the city was supposed to *428 do when it did nothing, but' fill in a low spot, and we think it would he illogical to hold that the city by doing nothing, but fill the low spot, could keep the property which was given it in exchange for doing something.
Therefore, we do not feel obliged to go deeply into these facets of the litigation so thoroughly explored by the chancellor. As he observed, all parties to the transaction intended that the property should be improved. It was expressly provided in the deed that failure to carry out within five years the purposes for which the conveyance was made should work a reversion. The city had obtained the other half of the block for a considerable sum; it had obtained grantors’ half for nothing, except the promise to improve it.
The case may be decided by a comparison of the condition of the property at the time of the conveyance and at the time of suit, more than nine years later. As the chancellor commented, it would be difficult to determine precisely the nature of the improvement that was to be made in order that the property could be enjoyed by the public and would be a fitting memorial to Arthur R. Malone. But the city should not be allowed to retain the gift by doing practically nothing to make the property more useful or more attractive. Had the city attempted improvement of some sort, there would be occasion to discuss and determine the question whether or not the improvement so conformed to the intention entertained by all parties to the transaction as to defeat the plaintiffs in their suit.
“After the execution of the deed,” to quote from the decree, “the City did nothing to the property except to discontinue its use for any commercial purpose, plant a small amount of grass, keep all the grass mowed * * * [and] to fill parts of.the lot which were so low that, in times of very wet weather water accumulated and sometimes remained for a day or two.” And he found that “the property is now, except for the filling done by the City, in much the same * * * condition that it was when the deed was executed.” Upon such a feeble showing of improvement between 1 December 1945 and 6 July 1955, the city should not be allowed to retain the gift.
The decree is reversed with directions to enter one for the appellants granting the relief sought in the bill.
HOBSON, ROBERTS and O’CON-NELL, JJ., concur.
TERRELL, C. J., and DREW and THORNAL, JJ., dissent.